UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DANIEL R. MORGAN

v.                                                                                                    C.A. NO. 10-241 S

ASHBEL T. WALL, ET AL.

REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff, Daniel R. Morgan ("Plaintiff"), *pro se*, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint and a supplement to the complaint[1] (together, the "Complaint") pursuant to 42 U.S.C. § 1983 ("§ 1983") naming various ACI officials as defendants ("Defendants") (Dockets ## 1 & 4). Presently before the Court are two motions filed by Plaintiff: (i) a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(2) (Docket # 2) and (ii) a motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure (Docket # 3).

These matters have been referred to me for determination; however, upon screening the Complaint, as required by 28 U.S.C. § 1915(e)(2) ("§ 1915(e)(2)") and 28 U.S.C. § 1915A ("§ 1915A"), I have found that the Complaint fails to state a claim upon which relief may be granted. Therefore, I address both motions by way of this Report and Recommendation. For the reasons stated below, I recommend that the Complaint be DISMISSED and Plaintiff's motions for leave to proceed *in forma pauperis* and for a preliminary injunction be DENIED.

BACKGROUND

The following background is based on the allegations in the Complaint, which are taken as true for purposes of this Report and Recommendation.

I.  Classification

Plaintiff is incarcerated at the ACI High Security Center (the "HSC"). He alleges that in the HSC he is confined to a cell for 23 hours per day, extremely isolated, and subjected to severe limitations on all human contact. He further alleges that he is disqualified from parole

---

[1] A week after filing the initial complaint, Plaintiff filed an "Affidavit" alleging additional claims against different ACI employees and requesting that the Affidavit be added to the complaint (Docket # 4). Rule 15 of the Federal Rules of Civil Procedure allows a plaintiff to supplement a complaint upon motion and reasonable notice. Fed.R.Civ.P. 15(d). Here, Plaintiff's request to add the Affidavit to his complaint will be construed as a Motion to Supplement the Complaint, which will be granted, and Plaintiff's Affidavit will be considered as a supplement to the complaint ("Supplement").

1

consideration and that his classification to the HSC is for an indefinite duration. Plaintiff also alleges that he has neither been convicted of organized crime nor been involved in any gangs. Based on these facts, Plaintiff urges that he has a liberty interest in avoiding transfer to the HSC and implies that Defendants violated his due process rights by transferring him there.

## II. Excessive Force

Plaintiff states that on May 6, 2010, he cut his own wrist, necessitating five stitches. He states that, as a result, he was sent to a cell in the psychiatric unit with a camera in it to monitor him. He alleges that the cell was filthy, with feces and blood on the walls and a urine-saturated bunk. Plaintiff states that he was neglected by the staff and added his own feces to the wall and himself, and that he used a flake from the metal bunk to cut his wrist worse than before. He states that, subsequently, he was placed in a boiling shower and then four-point restrained on a metal table. Plaintiff alleges he was allowed to remove the mattress and bang his skull against the metal table until he lost consciousness. He further states that he was left cuffed and shackled for seventeen hours, during which time he was prohibited from using the toilet, drinking water and getting up, and was not properly checked by medical staff. Plaintiff concedes that he must have spit at an officer and threatened to kill another officer during the foregoing ordeal, and states that he was booked for such conduct (the "May 6th Bookings"). Plaintiff does not name any defendant as responsible for the alleged foregoing actions against him.

## III. Legal Mail

Plaintiff states that on May 27, 2010, Officer Klaus opened Plaintiff's outgoing legal mail containing the initial complaint and read the complaint in the dining area before the entire B-Mod at the HSC.

## IV. Retaliation

Plaintiff further states that, later on May 27, 2010, he was found guilty on the May 6th Bookings and sanctioned with 109 days in disciplinary confinement and loss of good time. On May 28, 2010, Warden Lefebvre, after reviewing Plaintiff's case and consulting with a social worker, denied Plaintiff's appeal regarding the guilty finding. Although Plaintiff concedes that he must have threatened and spit at the officers, he implies that the guilty finding and appeal denial were in retaliation for his filing the complaint that Officer Klaus read aloud. First, Plaintiff urges that, after he explained the circumstances to which he was subjected on May 6, 2010, Captain Headen and Deputy Warden Lefebrve told him that the bookings were not valid for a hearing. Additionally, Plaintiff states that a previous booking against him for attempting

suicide had been overturned by Deputy Warden Auger on appeal because of his "unstable state of mind," Supplement at p.1, and urges that Deputy Warden Lefebrve should have consulted with a psychologist rather than a social worker to determine if the bookings should be overturned due to Plaintiff's state of mind. Plaintiff therefore concludes that the only explanation for the guilty finding in this instance is retaliation for the lawsuit he filed.

V.     Access to Legal Books

Finally, Plaintiff alleges that he is being denied access to legal books that he needs to follow-up on his litigation.

## DISCUSSION

I.     Screening Under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis,* § 1915(e)(2) instructs the Court to dismiss a case at any time if the Court determines that the action, *inter alia,* fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). Similarly, § 1915A directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and dismiss such claims for identical reasons. 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) and § 1915A is identical to the legal standard used when ruling on a 12(b)(6) motion. *See Pelumi v. Landry*, No. 08-107, 2008 WL 2660968, at *2 (D.R.I., June 30, 2008). In making this determination, the Court must accept plaintiff's allegations as true and construe them in the light most favorable to plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949-1950 (2009). Further, the Court must review pleadings of a *pro se* plaintiff liberally. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). A claim fails to state a claim for which relief may be granted if the factual allegations fail to "raise [plaintiff's] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *see also Iqbal*, 129 S.Ct. at 1949-1951 (discussing the plausibility requirement); Fed.R.Civ.P. 8(a)(2).

A.     Legal Standard Under § 1983

In order to maintain a § 1983 action, the conduct complained of must have (i) been committed by a person acting under color of state law and (ii) deprived the plaintiff of a constitutional right or a federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). Here, although it is clear that Defendants were acting under state law, Plaintiff's

claims are reviewed to determine if they allege facts indicating that Defendants deprived him of a constitutional or federal statutory right.

### B. Procedural Due Process Claim

The Fourteenth Amendment's Due Process Clause provides that a state shall not deprive any person of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV. Procedural due process questions are examined "'in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Gonzalez-Fuentes v. Molina*, Nos. 08-1818 & 1819, --- F.3d ----, 2010 WL 2330209, at *14 (1st Cir. June 10, 2010)(quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989) (internal citation omitted)).

#### 1. Liberty Interest

Plaintiff here urges that he has a liberty interest in avoiding transfer to the HSC. A liberty interest can arise from either the Due Process Clause itself, "by reason of guarantees implicit in the word 'liberty,'" or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). With respect to the former, it is well-established that the Due Process Clause itself does not afford a prisoner a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532 (1976); *see also Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274 (1976)(prisoner has no constitutional right or inherent liberty interest in a security classification). With respect to the latter, the Supreme Court instructed that state-created liberty interests arise from state laws or regulations, but "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)(citations and footnote omitted).

To support his claim, Plaintiff points to *Wilkinson*, in which the Supreme Court held that Ohio prisoners had a liberty interest in avoiding assignment to the Ohio State Penitentiary (the "OSP"), Ohio's "Supermax" facility. *Wilkinson*, 545 U.S. at 224. In *Wilkinson*, the Supreme Court explained that the conditions in the OSP (including (i) prohibition of almost all human contact, "even to the point that conversation is not permitted from cell to cell"; (ii) limitation of exercise to only one hour per day and only in a small indoor room; (iii) placement for an

indefinite duration; and (iv) disqualification from parole eligibility upon assignment to the OSP), imposed atypical and significant hardship on the OSP inmates in relation to the ordinary incidents of prison life. *Id.* at 223-24. Plaintiff urges that the conditions in the HSC mirror those at the OSP described in *Wilkinson* and concludes that he, like the Ohio inmates, must have a liberty interest in avoiding such conditions.[2]

However, regardless of whether or not the conditions in the HSC impose an "atypical and significant hardship," Rhode Island law does not give rise to a state-created liberty interest regarding classification decisions. In order to demonstrate a state-created liberty interest, a prisoner "must establish both that the confinement or restraint creates an 'atypical and significant hardship' under *Sandin*, and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2$^d$ Cir. 1996); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2$^d$ Cir. 2010); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996); *Eason v. Thaler*, 73 F.3d 1322, 1326 (5th Cir. 1996); *Scheuerman v. Bozman*, No. 09-1386, 2010 WL 761125, at *5 (D.Md. Mar. 1, 2010). And, as Rhode Island law affords the RIDOC Director "unfettered final discretion over the classification and housing of prison-inmates in this state," there is no source of entitlement for a liberty interest regarding classification under Rhode Island state law. *Bishop v. State*, 667 A.2d 275, 277 (R.I. 1995); *see also, e.g., Taylor v. Levesque*, 246 Fed.Appx. 772, 774 (2$^d$ Cir. 2007)(denying prisoner's due process claim regarding his classification because Connecticut law commits classification decisions to the discretion of the Commissioner of Corrections); *Herrera v. Williams*, 99 Fed.Appx. 188, 189 (10th Cir. 2004)("Prisoners do not have a liberty interest in a particular prison classification where the state retains discretion in classifying prisoners"); *Eaton v. Danberg*, 545 F.Supp.2d 396, 399 (D.Del. 2008)(dismissing prisoner's due process claim because "neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification within an institution"); *c.f., Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 282-83, 118 S.Ct. 1244 (1998)(inmate had no liberty interest in

---

[2]Although Plaintiff suggests that he is subject to severe isolation mirroring the isolation in the OSP, Plaintiff's description of a common dining area for HSC B-Mod belies such conclusion. *See Austin v. Wilkinson*, 189 F.Supp. 719, 724-726 (N.D. Ohio 2002)(describing the severe isolation in the OSP, including requirements that prisoners eat alone in their cells and that prisoners have recreation alone or, less commonly, with one other prisoner in one of two indoor recreation cells), *aff'd*, 372 F.3d 346 (6th Cir. 2004), *rev'd on other grounds*, 545 U.S. 209 (2005).

clemency procedures because, in part, Ohio governor retained unfettered discretion as the final decisionmaker regarding clemency decision).

### 2. Process Due

Further, even assuming, *arguendo,* that Plaintiff has a liberty interest in avoiding transfer to the HSC, the Complaint does not allege that Defendants failed to provide him adequate procedural safeguards. The Complaint does not describe the process under which Plaintiff was initially placed in the HSC or any deficiencies connected with such process. Instead, Plaintiff urges that the "procedural codification" set forth in *Wilkinson* was not followed, presumably because he was assigned to the HSC even though he was not a gang member or convicted of organized crime. However, although the *Wilkinson* Court noted that the OSP placement policy included organized crime conviction and prison gang involvement as triggers for considering assignment of a prisoner to the OSP, the OSP placement policy did not state, and the Supreme Court did not find, that organized crime conviction or gang involvement was a prerequisite for assignment to a supermax facility. 545 U.S. at 225-230; *see also Austin v. Wilkinson,* 372 F.3d 346, 349-52 (6th Cir. 2004)(describing OSP placement policy), *rev'd on other grounds,* 545 U.S. 209 (2005). The Complaint, therefore, provides no basis from which it could be inferred that Defendants deprived Plaintiff of adequate procedural safeguards in assigning him to the HSC.

Accordingly, the claims in the Complaint alleging due process violations related to Plaintiff's assignment to the HSC fail to state claims on which relief may be granted and should be dismissed. I so recommend.

### C. Excessive Force

First, it is not clear whether Plaintiff intended to claim that he was subjected to excessive force in violation of the Eighth Amendment during the incident on May 6, 2010 or was providing the information as background for his retaliation claim. However, as Plaintiff fails to name any defendants responsible for the alleged actions against him on May 6, 2010, Plaintiff fails to state an Eighth Amendment claim on which relief may be granted. Any such claim in the Complaint should be dismissed. I so recommend.

### D. Legal Mail

Plaintiff also states that Officer Klaus opened and read Plaintiff's outgoing legal mail. Again, it is not clear whether Plaintiff intended to claim that Klaus's actions violated his First Amendment rights or if he was simply providing the information as background for his retaliation claim. However, even assuming the former, as "an isolated incident of mail

6

tampering is usually insufficient to establish a constitutional violation," *see Davis v. Goord*, 320 F.3d 346, 351 (2$^d$ Cir. 2003)(citations omitted), Plaintiff's claim against Officer Klaus fails to state a claim on which relief may be granted and should be dismissed. I so recommend.

### E. Retaliation

The First Amendment protects a citizen's right to petition the government. U.S. Const. amend. I. Retaliatory action for the exercise of this right is itself a violation of the Constitution actionable under § 1983, even if the action, standing alone, would not violate the constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc). A claim asserting retaliation for the exercise of a constitutional right consists of three elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) the plaintiff suffered an adverse action that would deter a person of ordinary firmness from the exercise of the right at stake; and (3) there was a causal connection between the constitutionally protected conduct and the adverse action. *Id.* at 394; *Price v. Wall*, 464 F.Supp.2d 90, 96 (D.R.I. 2006). However, "defendants may avoid liability by showing that they would have taken the same action even in the absence of the prisoner's protected conduct." *Roy v. Stanley*, No. 02-555, 2005 WL 2290276, at *5 (D.N.H. Sept. 20, 2005)(citing *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 10 (1st Cir. 2005)); *see also McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979)(plaintiff must demonstrate that retaliatory act would not have occurred "but for" protected conduct). Furthermore, even if the defendant had an impermissible reason for the alleged adverse action, if a separate, permissible reason exists, the defendant will not be liable. *See Sullivan v. Corr., Me. Warden*, 96 F.3d 1430, at *1 (1st Cir. 1996); *Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996); *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993), *cert. denied* 512 U.S. 1209, 114 S.Ct. 2684 (1994).

Here, Plaintiff alleges that he was subjected to the adverse action of 109 days in disciplinary confinement and loss of good time as a result of being found guilty on the May 6th Bookings and having his appeals regarding the bookings denied. Plaintiff further alleges, as evidence that the adverse action was in retaliation for his filing the instant lawsuit, that (i) the disciplinary hearing was held just after Officer Klaus read the complaint; (ii) Captain Headen and Deputy Warden Lefebrve had previously told him that the bookings were not valid for a hearing; (iii) a previous booking against him for attempting suicide had been overturned on appeal because of his unstable state of mind; and (iv) Deputy Warden Lefebrve consulted with a social worker rather than a psychologist to determine if the bookings should be overturned due to

Plaintiff's state of mind. However, as Plaintiff concedes that he was guilty of the offenses charged in the bookings, Deputy Warden Lefebvre had a permissible reason for imposing segregation and loss of good time. Accordingly, on the face of the Complaint, Plaintiff's claim of retaliation fails to state a claim on which relief may be granted and should be dismissed. I so recommend.

### F. Legal Access

Finally, Plaintiff's claim that he is being denied access to legal materials also fails to state a claim on which relief may be granted. In *Bounds v. Smith*, the Supreme Court held that prisoners have a constitutional right of access to the court. 430 U.S. 817, 821, 97 S.Ct. 1491 (1977). However, to recover under this theory, a plaintiff must demonstrate that he or she suffered an actual injury, such as the frustration of a nonfrivolous legal claim, as a result of the interference with his or her access to the court. *See Lewis v. Casey*, 518 U.S. 343, 351-52, 116 S.Ct. 2174 (1996). Plaintiff fails to allege any such injury here, and, thus, his claim regarding denial of access to legal materials should be dismissed. I so recommend.

## II. Preliminary Injunction

Plaintiff filed a preliminary injunction motion seeking a Court order reassigning him to a lower security unit. Plaintiff, as the party moving for a preliminary injunction, has the burden of persuasion to show: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is denied; (3) the harm he will suffer outweighs any harm to defendants if the preliminary is granted; and (4) the preliminary injunction will promote the public interest. *McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001). "A failure by the plaintiff to meet any one of the four requirements requires a denial of the motion." *Figueroa v. Wall*, No. 05-415, 2006 WL 898166, at *2 (D.R.I. Mar. 14, 2006).

Here, as I have found that Plaintiff's claims fail to state claims on which relief may be granted and recommended that the Complaint be dismissed, Plaintiff has not shown a likelihood of success on the merits with respect to the instant preliminary injunction motion. Accordingly, I recommend that Plaintiff's motion for a preliminary injunction be denied.

## CONCLUSION

As discussed above, I find that the Complaint fails to state claims on which relief may be granted, and, thus, recommend that the Complaint be DISMISSED and Plaintiff's motions for leave to proceed *in forma pauperis* and for a preliminary injunction be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed.R.Civ.P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (*per curiam*); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Jacob Hagopian
_____
Jacob Hagopian
Senior United States Magistrate Judge
Date: August 31, 2010